Good morning. May it please the Court, my name is David Schlesinger and I represent the appellant William Walsh, IV. In a motion in limine and a subsequent hearing on that motion, Mr. Walsh, through counsel, made what could ultimately be characterized as a fulsome request to stipulate that the five images and the five videos that the government then sought to offer in its case in chief at trial constituted sexually explicit content involving minors and, most importantly, was willing to allow the government's testifying case agent to provide a detailed narrative of everything that occurred in those images and videos. In that regard Is the offer of the narrative the one thing that distinguishes your case from other cases that have allowed the admission of a limited number of videos or images? I think it's the key distinguishing characteristic, Your Honor, but not the only one. For example, in this Court's opinion in Gannot, the Court noted that it was significant that the district court had given a cautionary instruction But there was an instruction given here. It may not have been targeted to child pornography, but the Court certainly did give an instruction of that the jury had to be impartial, that the jury could not be swayed by passion or bias or sympathy. It did give that. I'm sorry, Your Honor. It did give that in its final instructions before the jury began to deliberate. And it certainly, as we say in Texas, fore-dyed extensively on the ability of individual members of the panel to be fair in the face of this relief. Well, two points, Your Honor. Of this evidence. Two points, Your Honor. First is that what Gannot made plain is that the instruction had to occur before the jury saw the images and videos. And so here it was part of a general pattern instruction that was given just before the jury began to deliberate. Second, regarding the voir dire process, we acknowledge that most of the jurors who exhibited overt bias were stricken. But there was one juror who admitted that he felt uncomfortable. Everybody feels uncomfortable watching these images or even hearing narratives about them. That cannot be the test for a juror who also says, I can be impartial. I'm not going to  We haven't made a specific implicit bias argument regarding that juror. What we're saying is that within the overall panoply of factors here, that is something the court should consider. But most importantly, as Your Honor first noted, it was the detailed narrative and stipulation, the stipulation that Mr. Walsh was willing to allow the government to give that detailed factual narrative regarding what occurred in the images and videos that distinguishes this case from just about every other case that is cited in the briefing regarding Old Chief, with the exception of the Eighth Circuit's opinion in Sewell, which we submit as an outlier that's contrary to this court's holdings in Moreno, Valderrama, and Old Chief itself. If the court had accepted this give descriptions approach, what would have happened with the file names? So I understand that the discussion was, could we describe what it looks like on the video instead of showing the video? But what about the file names? Was there discussion about whether the jury would see what the files looked like on the outside of them and their names? I don't think there was a specific discussion, Your Honor, regarding whether screenshots of the file names would be shown. But the testifying agent did read several instances of the file names in the record. And without repeating them in open court, I don't think they leave much to the imagination regarding what was depicted in those files. They were fairly graphic. What if we disagree about that? I mean, it seems like some of the names only are so informative if you understand what these abbreviations mean, which I'm not sure everyone would. So I'm trying to figure out whether, like, was this description that would be given instead of showing the files going to include some description of the names? Or was the name issue going to be handled a different way? Well, it's not certain, Your Honor, because the government was unwilling to negotiate whatsoever regarding this. It categorically rejected my client's proffer of a stipulation. Some of the descriptions did have titles, the nature of which were not self-evident. Some did not, Your Honor. But the testifying agent gave his lay opinion under Rule 701 regarding what those meant within the context of his general knowledge and his experience in this investigation. So the jury definitely had context as to what those file titles meant. And you think that would have happened even if this stipulation had been pursued? That's correct, Your Honor. I think that the way the government conducted its trial would not have been affected in the slightest but for not being able to publish the images and videos to the jury. That's the only part of the government's case that would have changed. But because those images and videos are so emotionally toxic, it overwhelmed everything else that the government brought forward. I have two questions about that. Certainly, Your Honor. The first question is, in your reply brief, you appear to argue that the stipulation included a stipulation that no person, including your client, could have seen any of the contents without realizing that they were child pornography. Where will we find that in the record other than in your reply brief? Certainly, Your Honor. I'd note that the Crawford stipulation appears on page ER10 involving a brief statement that Mark Carlos, the trial attorney, made. He said, we are willing to stipulate and allow their expert to basically read into record the descriptions and the descriptions are vile enough. I don't think they need to see the photos and so on and so forth. But did the so on and so forth say, and we stipulate that no reasonable person, including the defendant, could have seen any of these without realizing that they were child pornography? He didn't so stipulate, Your Honor. Does that matter? But here, unlike Ganneau, which was a mistaken download case, which the defendant claimed he had downloaded legal pornography, my client claimed that he never saw any of these images, any of these file titles whatsoever. I understand, but the government's theory, I mean, your client's theory was it must have been somebody else. The nasty stepson or his somewhat perverted friends. That's correct, Your Honor. Who I gave the password to, but had no idea what they were doing. And even though I extensively used the computer myself, I never saw any of this stuff. And the government's theory, as I understand it, was, yeah, you used this computer so extensively and so exclusively that this was yours. And therefore, the jury could draw the inference from the evidence that your client saw the images. And I guess my question to you is, without the stipulation that anybody who saw any of the images would immediately realize what they involved, without stipulating that your client would have been in that category, it would have been, the stipulation was properly rejected within the discretion of the court, given the limiting steps the court otherwise took. I notice my time is dwindling. I'd like to reserve a little bit for rebuttal, but what I would say is I respectfully disagree, Your Honor, regarding the precise contours of the stipulation. Because first, as I mentioned, the government categorically rejected any negotiation whatsoever, so we didn't get to those niceties that you were alluding to. And second, again, because of the nature of the defense, the jury could have circumstantially inferred knowledge. The crux of our argument, of course, is that the evidence that the district judge ultimately allowed the jury to consider just so overwhelmingly, emotionally overwhelmed them that they couldn't properly sit back and make that dispassionate analysis regarding the circumstantial case. Does it matter that the government barely referred to these? Not only were they very short and limited, but the government, after that, barely referred to them. Doesn't that make a difference in terms of cabining the toxic effect? Well, I note that, Your Honor, but I also note that it goes to show that despite the government's proffer during the motion hearing that it intended for these images and videos to go to my client's knowledge, it didn't in any way make that argument during the opening statement or in the closing argument. So it only used those evidence to demonstrate the statutorily required element of the sexually explicit content involving monitors. So if anything, I think, Your Honor, it cuts the other way. They didn't try to emotionally inflame the jury during the opening statement and closing arguments, but it also didn't tie it into knowledge. I'd be a little bit troubled by the fact that if they had been more fulsome in their references during argument or in other witness questioning about the content and its nature, that you would have been challenging that as a separate ground for reversal. Well, you mean possibly, Your Honor. It's a fine line that you're putting the prosecutor, you're challenging the prosecutor to walk. Again, I think here, once again, I would like to try to reserve some time for a vote. I'll give you a little bit of time when we're still asking questions. Thank you very much, Your Honor. It is a fine line, but it also goes to show that the government engaged in evidentiary overkill. It simply didn't need to take, because of the circumstantial case it was presenting, it didn't need to present these emotionally toxic images and videos to the jury. So, this is different from Old Chief, in my view, I think, because in Old Chief, the issue was other crimes, and other crimes are the type of thing that you might punish the defendant for whether or not they did the current crime. But here, your defense was, it wasn't me. So I don't understand how seeing really inflammatory videos would make it more likely to convict your defendant, because if the jury believed it was someone else, then they just get mad at that other person. It's not like Old Chief, where it is the crime of this person, one way or the other. Well, I would refer, Your Honor, to this Court's opinion in Merino-Valderrama, which postdated Old Chief, applied Old Chief, and determined that it was not appropriate under Old Chief's view. But there, it was undisputed that the person had not seen the videos. So at that point, there's just no relevance at all to showing the videos, because no one had seen them. And they did show the covers, because the theory was that the defendant had seen them. In fact, but it was undisputed that he was not the one who understood what they contained, other than what the covers told him. I'd also note, Your Honor, in Merino-Valderrama, there wasn't, A, there wasn't a written narrative stipulated to. It was simply a rote stipulation regarding the content. And, B, there actually was a cautionary instruction given, and this Court determined that it wasn't sufficient under those circumstances. So I understand Your Honor's points about some of those distinguishing characteristics, but the overall import I would draw from Merino-Valderrama is that when you have, you know, emotionally charged, emotionally overwrought material of this sort, the District Court has to err on the side of caution when the defendant is willing to make a fulsome stipulation regarding what it actually depicts. If there are no further questions. I'll give you a minute for a rebuttal.  May it please the Court, Zach Howe on behalf of the United States. So I'll begin with what the actual stipulation was. The stipulation is contained in writing at pages 69 and 70. It's discussed at pages 10 and 11. I do not read that stipulation, and I don't think the argument was advanced until the reply brief that that stipulation actually included a narrative description of the child pornography. And so, essentially, the Defense Counsel was just saying that that's an option available to the government. It can read these descriptions at trial, but of course, that has no evidentiary force in and of itself. That's not the same as a stipulation. And so I think here we're in the exact same situation that we were in Ganoe, which is you have, at best, a stipulation that anyone who saw this material would know that it was child pornography. And can you link that to your argument that it was shown beyond a reasonable doubt that he was the guy who did the accessing, who ordered it, downloaded it, viewed it, and made it available for sharing? That's right. Yes. And that was linked through independent evidence. Okay. So tell me what that link is. Where on the record will I find that link? Showing that he was the one who viewed it. That showing the actual video excerpts and images, limited as they were, helped establish the link that he was, in fact, the one who did it. Oh, I see. Sure. So I think there are two reasons. One is the kind of general reason that many of the cases other than Ganoe focus on, which is that showing the material itself simply makes it more likely that the defendant knew about that material because this is not the sort of stuff that just surreptitiously or a computer. The second is the more targeted reason identified in Ganoe, which is that when you have material that has explicit titles and that has ambiguous titles, but it's all categorized and filed in the very same folder, showing both sets of material helps show that the defendant actually viewed it because he knew to put it in the same folder. But it doesn't show that it was him as opposed to his son or stepson. Here, I think it at least helps show that because the material was all placed in a folder on the external hard drive that had the names of Walsh's wife, his children. So this is a folder that's specific to him and he knew to take the ambiguously titled files and put those in that same training folder alongside the explicitly titled files. And so showing those clips, and there were ambiguously titled clips that were shown, that helped show that all of those files were viewed. And did the forensic evidence show that he had access to those files on various occasions? Yes, there was evidence, I believe it begins at page 455 of the record if I have that right, 445, that these files were in fact viewed on the VLC media player. By whom? Oh, so I think the way you get there is the evidence that this computer was only ever used by Walsh. So the forensic evidence showed that Walsh... At least by his password. Well, yeah, that's right. His login was used to access the computer. His emails were accessed from the computer. His Facebook was accessed from the computer. TurboTax that was linked to his email was accessed using the computer. Is there any evidence that his stepson would have used TurboTax? There is no evidence. It was his email that was used. It was his tax. Right. And his account changed. He first said that it was his son who downloaded TurboTax. Then he said he downloaded TurboTax, but his son did the taxes. And then he said, actually, I did the taxes. So it was sort of an evolving story. But suffice it to say, given all of that use of email and social media, the pervasive downloads of child pornography simply couldn't have been explained by an incidental use here or there of a son or a neighbor. Because keep in mind, this spanned four months, 375 downloads, 55 uses of LimeWire, 61 uses of BitTorrent. And so I think at best, the defense was, well, a neighbor or my son or my son's friend could have had access to the computer here or there. That simply would not account for that pervasive use of the computer. And so I think, and this is sort of shifted into what would be a harmless error argument. Yeah, exactly. That's right. And so I think this was tied to Walsh's use, and therefore putting the information in was helpful to show not only the contents but his knowledge. But even if this court were to find error, given that overwhelming evidence that he was the only one using the computer and that you had this pervasive use, any error would be harmless. Do you think the Sewell decision in the Eighth Circuit goes too far? Like here, could the judge have, within his or her discretion, accepted this offer of stipulation and description? So if there were actually an offer to stipulate to the descriptions as opposed to just saying essentially, I won't object if you put them in, it's possible the court would have discretion. Again, this court has said that the discretion to admit or deny evidence under 403 is extremely broad. So it's possible that it wouldn't have been an abuse of discretion to keep out the evidence. There's no case law on that, so it's sort of an open question. Well, Sewell is case law on that, but not from our circuit. That's right. The only case law that we have says that, in fact, it's an abuse of discretion not to allow that evidence in. But I simply don't think we have those facts here. So I don't know that the court really needs to reach that. And why does your brief contain discussion of unrelated acts like cameras in bathrooms and things that seem completely irrelevant here? So I think it's because it shows just how broad the universe of material was that the government could have sought to admit. And I think that underscores how narrow the subset of the information that actually got in was because we had about a minute and 16 seconds worth of material that came in and five images. And you think any of that, cameras in bathrooms, plausibly could have been admitted at this trial? The district court said that much of that information would not have been admissible. There could have been some purposes, certain impeachment purposes or others where it may have come in in narrow circumstances. So basically the district court saved your trial lawyer from error? I don't think the government ultimately sought to admit any of that. It was something that was considered. It never ultimately sought to admit any of that. But it was in your brief. That's correct. And again, I place that there simply to underscore this is really a narrow subset of the total universe of evidence that was available. But it wasn't admissible evidence, so it seems really kind of wasting our time and everyone's time for you to have had it in your brief to us. And again, I want to emphasize that the court did say some of this information would have been admissible for limited purposes. But it wasn't an issue because the jury never heard it or saw it? That's correct. All right. Now, the only case that Walsh cites as support is Marina Balderrama. I think there are three crucial distinctions here. In fact, Gannot describes the first one as the crucial distinction. It's that it was undisputed that the defendant didn't see that evidence. The second is that it wasn't a narrowly tailored subset. It was over 10 minutes. And then the final is that it was emphasized at trial in the closing over 10 times. None of those factors are present here. So I simply don't think Marina Balderrama gets us very far. Now, the final point I'll make, there was one other distinction between this case and Gannot that was offered, which is that that was a mistaken download case, whereas this is the argument here is that the evidence was just never seen by the defendant. He wasn't the one who did it. That's actually not the correct characterization of Gannot. In Gannot, the defendant put on three witnesses to try and prove that someone else was the one using the computer and the defendant never actually used the computer. It turned out that that person that they were saying used the computer was fictitious, but that was the defense. So the defense there was the same as the defense here. Now, there were some suggestions that if the defendant had seen the titles, he might not have recognized that they were child pornography, but the primary defense was the same. And, of course, here I think you also had those undertones of that same secondary defense because, of course, Walsh admitted that he downloaded BitTorrent, he downloaded LimeWire, he downloaded a movie on LimeWire, and the evidence showed that that movie was watched on the VLC media player. So, in other words, he would have had to have been using the same software that had all the titles of those files on them. So it helped the government to show that those titles were, in fact, explicit material just the way that it helped in Gannot. So I would ask that this court affirm. If there are no other questions, then I believe I'm out of time. Thank you. Thank you. I may quickly respond to Chief Judge Rosenthal's suggestion that harmless error might be at play. I think it would be... Oh, I thought that was the lawyer, not the judge. Just to address that line of questioning, to quote from Marino Valderrama, 146-537-63, the test is whether the evidence likely created an emotional impact that would influence the verdict and therefore significantly reduce any possibility that the jury would acquit the defendant. So notwithstanding the circumstantial evidence that the government points to, our position is that the nature of these images and videos was such that any jury, not having seen anything remotely like this, would have been emotionally overwhelmed. As Mark Carlos, the trial counsel for my client, noted during his closing argument, the jury had cheered up during the publication of these images and videos and the district court, post-verdict, offered free psychological counselling services to the jury. So that is not something that... Right, but this is a porn trial. What is the strongest case in your favour where it was held that the actual evidence of pornography with which he was charged should not have been shown to the jury? Marino Valderrama would be the one that we would initially cite to you, Your Honour. We also think that when you do a careful analysis of Ganot, many of the factors that Ganot enumerated as endorsing the district court's approach in that case are not present here. So those are the two main authorities we would look to. If there are no further questions, I'd be pleased to submit. Thank you. Thank you, both sides, for the arguments. The case is submitted.
judges: Schroeder, Friedland, Rosenthal